**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF NEW YORK**

---

GEORGE R. SWANTON,
                Plaintiff,

v.                                    No. 08-CV-1187
                                     (NAM/DRH)

LAWRENCE SCZERBA, S.H.T.A. Central
New York Psychiatric Center also known
as Larry Hagan; and CINDY LAW, Medical
Doctor, Central New York Psychiatric
Center,
                Defendants.

---

**APPEARANCES:**                              **OF COUNSEL:**

GEORGE R. SWANTON
04-A-3593
Plaintiff Pro Se
Attica Correctional Facility
Post Office Box 149
Attica, New York 14011

HON. ERIC T. SCHNEIDERMAN          CHRISTOPHER W. HALL, ESQ.
Attorney General for the                   Assistant Attorney General
   State of New York
Attorney for Defendants
The Capitol
Albany, New York 12224-0341

**DAVID R. HOMER**
**U.S. MAGISTRATE JUDGE**

### REPORT-RECOMMENDATION AND ORDER[1]

Plaintiff pro se George R. Swanton ("Swanton"), an inmate in the custody of the New York State Department of Correctional Services ("DOCS"), brings this action pursuant to 42 U.S.C. § 1983 alleging that defendants, two employees of the Central New York Psychiatric

---

[1] This matter was referred to the undersigned for report and recommendation pursuant to 28 U.S.C. § 636(b) and N.D.N.Y.L.R. 72.3(c).

Center ("CNYPC"),[2] violated his constitutional rights under the Eighth Amendment. Second Am. Compl. (Dkt. No. 84). Presently pending is defendants' motion for summary judgment pursuant to Fed. R. Civ. P. 56. Dkt. No. 116. Swanton opposes the motion. Dkt. No. 121. For the following reasons, it is recommended that defendants' motion be granted.

## I. Background[3]

The facts are related herein in the light most favorable to Swanton as the non-moving party. See subsection II(A) infra.

The incidents at issue herein occurred while Swanton was admitted to Central New York Psychiatric Center ("CNYPC").[4] Swanton has undifferentiated schizophrenia which causes him to experience delusions. Swanton Dep. (Dkt. No. 116-2) at 13. On February 24, 2008, Swanton experienced a psychotic episode and shattered a wall clock by striking it with a cup he had in his hand. Second Am. Compl. (IV)(1); Dkt. No. 117 at 13; Swanton Dep. at 26-27. Swanton stated that he thought the clock was speaking to him and that the only way to get the chip removed from his head was to destroy the clock. Dkt. No. 117 at 13; Swanton Dep. at 26-27; Swanton Aff. (Dkt. No. 121) ¶ 5.

---

[2] Four other defendants were previously dismissed from the action. See Dkt. Nos. 10, 46, 83; First Dkt. Entry dated Jan. 5, 2009.

[3] Swanton also supplied medical records in support of his claim. As the medical records from both parties are identical, for ease and efficiency, citation will be made only to those attached to Law's affidavit.

[4] "CNYPC is operated by the New York State Office of Mental Health and provides forensic mental health services to patients incarcerated in correctional facilities under . . . DOCCS [] through the operation of an . . . inpatient hospital in Marcy, New York . . . ." Law Aff. (Dkt. No. 117) ¶ 2.

In response to Swanton's outburst, defendant security guard Sczerba restrained Swanton. Dkt. No. 121-4 at 14(1); Swanton Aff. ¶ 6. Sczerba placed both of his arms around Swanton's upper body, similar to a bear hug, and escorted him out of the day room, through the hallway, to a seclusion room. Dkt. No. 121-4 at 16(8); Swanton Dep. at 27; Swanton Aff. ¶ 6. The parties dispute whether Swanton resisted during the escort. Compare Dkt. No. 117 at 13; Swanton Dep. at 28, 65-66 with Dkt. No. 121-4 at 15(4). Swanton contends that upon arriving at the room, Sczerba released his arms, grabbed Swanton by the back of the collar, and pushed him towards a hard plastic chair which was located a few feet in the seclusion room. Swanton Dep. at 29-32; Swanton Aff. ¶ 6. Swanton's body rotated prior to landing in the chair and his left shoulder blade hit the chair. Swanton Dep. at 32. Upon falling into the chair, Swanton yelled out in pain that his shoulder had been injured. Swanton Dep. at 32-34; Swanton Aff. ¶ 7. Sczerba instructed Swanton to remain sitting in the chair and to remain quiet. Swanton Dep. at 34.

Approximately ten to fifteen minutes later, non-party Dr. Farago examined Swanton. Dkt. No. 117 at 13; Swanton Dep. at 35-37; Swanton Aff. ¶ 8. He noted that Swanton complained of pain when moving his left shoulder. Dkt. No. 117 at 13; Swanton Dep. at 39-40; Swanton Aff. ¶ 9. Dr. Farago ultimately concluded that there were "no significant findings," indicating no injuries, though he did provide Swanton with Tylenol for pain relief. Dkt. No. 117 at 13; Swanton Dep. at 68. Swanton disagrees with this assessment, asserting there were significant findings subsequent to this event given that he was provided pain relief, an x-ray, and physical therapy. Dkt. No. 121-1 at 4 (No. 22). After this evaluation, Swanton removed his sweatshirt and fashioned an impromptu sling to immobilize his left arm. Swanton Dep. at 40, 76; Swanton Aff. ¶ 9.

3

The following day, Swanton was seen by two other, non-party physicians. Swanton Dep. at 51. First, Dr. Amidon examined Swanton, as he continued to complain of pain in his left shoulder and shoulder blade. Dkt. No. 117 at 15-17. Dr. Amidon continued the prescription of Tylenol, along with Flexeril, a muscle relaxant, for the following three days. Dkt. No. 117 at 15-17; Swanton Dep. at 51. Dr. Amidon also ordered an x-ray of Swanton's shoulder. Dkt. No. 117 at 15-17; Swanton Dep. at 51. An hour later, Dr. Colosi examined Swanton and when he palpated Swanton's shoulder, Swanton yelled in pain. Dkt. No. 117 at 15, 17. Dr. Colosi recommended that Swanton receive Vicodin for pain, instead of Tylenol, as needed for the next two days. Dkt. No. 117 at 15; Swanton Dep. at 51; Swanton Aff. ¶ 11. That evening, Swanton attended his scheduled programming, although he complained that the chair in which he sat hurt his shoulder. Dkt. No. 117 at 17.

The following morning, February 26, nursing staff indicated that Swanton was sleeping comfortably. Dkt. No. 117 at 19. That afternoon, Swanton received pain medication and underwent the x-ray, continuing to wear his homemade sling. Dkt. No. 117 at 20; Swanton Aff. ¶ 12. Swanton also received pain medication that evening. Dkt. No. 117 at 21. On February 27, "Dr. Amidon reviewed the x-ray report and deferred to [defendant nurse practitioner Law] to review the report with [Swanton] and continue his [plan of care]." Law Aff. (Dkt. No. 117) ¶ 29; Dkt. No. 117 at 24. Law reviewed the report which "stated [Swanton]'s left shoulder had degenerative changes and calcific teninitis [sic] which meant there was calcification at the rotator cuff . . . There was no finding of recent or acute trauma to the shoulder." Law Aff. ¶ 31; see also Dkt. No. 117 at 23 (x-ray report showing "moderate degenerative changes" to the shoulder joints, "calicification at the rotator cuff insertion consistent with calcific tendonitis", and "multiple old healed adjacent rib

4

fractures.").

The following morning, February 28, Swanton refused to shower but did eventually agree to take pain medication in the morning and afternoon. Dkt. No. 117 at 26. Law contends she saw Swanton for the first time that day, on her medical rounds, and discussed the x-ray report with Swanton explaining to him that his injuries were chronic and had developed over time,[5] there was no indication of an acute trauma, and he had tendonitis. Law Aff. ¶¶ 35-38; Dkt. No. 117 at 29-30. Swanton could not definitively recall whether Law had been one of the individuals that initially responded to him on February 24 with Dr. Farago. Swanton Dep. at 58-60; Swanton Aff. ¶ 19. Swanton contends that instead of discussing the x-ray report, Law informed him he had a "pulled muscle" in his shoulder. Second Am. Compl. (IV)(4); Swanton Dep. at 79 (affirmatively stating that Law did not discuss the x-ray reports with him); Dkt. No. 121-1 at 6 (No. 45) but see Swanton Dep. at 62-63 (admitting that Law discussed the x-ray results with him). Moreover, Swanton disagrees with Law's interpretation of the radiology report and subsequent diagnosis. Swanton Dep. at 53-55; Swanton Aff. ¶¶ 17, 31; Dkt. No. 121-1 at 6-7 (Nos. 46-47). Law examined Swanton, who was complaining of shoulder blade pain and limited range of motion, and advised him that he had degenerative changes in his joints. Law Aff. ¶ 38; Dkt. No. 117 at 29-30. Law recommended physical therapy ("PT"), to which Swanton agreed.

---

[5] Swanton had a history of injuries to the left side of his body. Dkt. No. 117 at 13. In 1976, Swanton broke his collar bone and required a half body cast for its repair. Dkt. No. 117 at 13; Swanton Dep. at 70-71; Swanton Aff. ¶ 24 but see Law Aff. ¶ 39 (incorrectly stating that Swanton had broken his collar bone numerous times). The following year, Swanton was shot in his left forearm and required surgery. Swanton Dep. at 47, 69; Swanton Aff. ¶ 15. In 2003, Swanton lost consciousness and fell and broke his left ribs. Swanton Dep. at 48.

Law Aff. ¶ 40.  Swanton was evaluated by a physical therapist, who also agreed he would benefit from PT, and Swanton began therapy the following Monday, March 3, 2008.  Dkt. No. 117 at 31; Swanton Dep. at 80. Swanton was shown a variety of exercises, which he agreed to complete, and was provided Tylenol for pain.  Law Aff. ¶¶ 41-42; Dkt. No. 117 at 31.

After beginning therapy, Swanton began to shower again and began reporting to nurses that he was content and his pain and range of motion were improving. Dkt. No. 117 at 34 (stating that Swanton has not showered since date of injury and may require order to shower), 36 (report of first shower on March 3, 2008), 38 ("appear[ing] . . . content with his physical therapy today . . . No behavior problems or complaints of pain."), 43 (commenting that "physical health has been improving."), 55 (Swanton reporting on March 12, 2008 that his pain was being managed well), 61 (reporting on March 14 that his "arm is getting better [and he] can lift it up higher now."), 67 (reporting to nursing staff that his "shoulder is all healed," as he was able to do his PT routine successfully with light weights); Swanton Dep. at 82-83, 85-90.  Additionally, nursing staff observed Swanton successfully completing his exercises.  Dkt. No. 117 at 41.  The physical therapist also noted that the PT sessions were effective, seeing improvement with Swanton's range of motion and pain tolerance.  Dkt. No. 117 at 44 (commenting on Swanton's "fair tolerance to treatment" and improvement in his range of motion), 57.  By March 20, Swanton had reported to his physical therapist that he was doing much better and was able to dress himself independently, though sleeping on his left shoulder was still painful.  Dkt. No. 117 at 65.  The therapist also noted good range of motion in his shoulder.  Id.  On March 24, Swanton was discharged from PT stating that his shoulder was feeling good and that he could complete his therapy exercises, with light

6

weights, without difficulty. Dkt. No. 117 at 69. Swanton was instructed to continue with his home exercise program. Id.

On March 25, 2008, Swanton was discharged back to Auburn Correctional Facility. Dkt. No. 117 at 71. Swanton was "pleased to be returning to Auburn and thanked staff for all their help." Dkt. No. 117 at 73. Throughout the remainder of Swanton's incarceration, he continually received medication for intermittent pain in his shoulder, as well as an additional two rounds of PT. Swanton Dep. at 94-96; Swanton Aff. ¶¶ 33, 35, 38 (explaining that while his medical records indicated period where he was pain-free, Swanton's pain "comes and goes," so it is never truly resolved). Swanton never disputed that he received medical care but contends that he should have been given an MRI to facilitate diagnosis and treatment of his shoulder ailments to alleviate his constant pain. Second Am. Compl. (IV)(7); Dkt. No. 121 at 12, 121-1 at 8; Swanton Dep. at 76, 97; Swanton Aff. ¶ 14.

## II. Discussion[6]

In his second amended complaint, Swanton alleges that his Eighth Amendment rights were violated when he (1) was subjected to excessive force during the restraint by Sczerba and (2) received inadequate medical care for his injured shoulder. Defendants move for summary judgment on the grounds that Swanton's Eighth Amendment claims are meritless.

### A. Legal Standard

A motion for summary judgment may be granted if there is no genuine issue as to

---

[6] It appears that Swanton only opposes defendants' motion with respect to the excessive use of force. However, both Eighth Amendment claims will be discussed.

7

any material fact if supported by affidavits or other suitable evidence and the moving party is entitled to judgment as a matter of law. The moving party has the burden to show the absence of disputed material facts by informing the court of portions of pleadings, depositions, and affidavits which support the motion. Fed. R. Civ. P. 56; Celotex Corp. v. Catrett, 477 U.S. 317, 323 (1986).  Facts are material if they may affect the outcome of the case as determined by substantive law.  Anderson v. Liberty Lobby, 477 U.S. 242, 248 (1986).  All ambiguities are resolved and all reasonable inferences are drawn in favor of the non-moving party. Skubel v. Fuoroli, 113 F.3d 330, 334 (2d Cir. 1997).

   The party opposing the motion must set forth facts showing that there is a genuine issue for trial. The non-moving party must do more than merely show that there is some doubt or speculation as to the true nature of the facts.  Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 586 (1986).  It must be apparent that no rational finder of fact could find in favor of the non-moving party for a court to grant a motion for summary judgment. Gallo v. Prudential Residential Servs. 22 F.3d 1219, 1223-24 (2d Cir. 1994); Graham v. Lewinski, 848 F.2d 342, 344 (2d Cir. 1988).

   When, as here, a party seeks summary judgment against a pro se litigant, a court must afford the non-movant special solicitude.  Triestman v. Fed. Bureau of Prisons, 470 F.3d 471, 477 (2d Cir. 2006); see also Sealed Plaintiff v. Sealed Defendant #1, 537 F.3d 185, 191-92 (2d Cir. 2008) ("On occasions too numerous to count, we have reminded district courts that 'when [a] plaintiff proceeds *pro se*, ... a court is obliged to construe his pleadings liberally.'" (citations omitted))..  However, the mere existence of some alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment; the requirement is that there be no genuine issue of material fact.

Anderson, 477 U.S. at 247-48.

### B. Eighth Amendment

The Eighth Amendment explicitly prohibits the infliction of "cruel and unusual punishment." U.S. Const. amend. VIII. Eighth Amendment obligations include the duty to protect prisoners from other known harms. Farmer v. Brennan, 511 U.S. 825, 829 (1970); Matthews v. Armitage, 36 F. Supp. 2d 121, 124 (N.D.N.Y. 1999) (citations omitted).  It also includes the provision of medical care. Hathaway v. Coughlin, 37 F.3d 63, 66 (2d Cir. 1994). The test for a § 1983 claim is twofold. First, the prisoner must show that the condition to which he was exposed was sufficiently serious. Farmer, 511 U.S. at 834. Second, the prisoner must show that the prison official demonstrated deliberate indifference by having knowledge of the risk and failing to take measures to avoid the harm. Id. "[P]rison officials who actually knew of a substantial risk to inmate health or safety may be found free from liability if they responded reasonably to the risk, even if the harm ultimately was not averted." Id. at 844.

### 1. Excessive Force

Inmates enjoy an Eighth Amendment protection against the use of excessive force and may recover damages for its violation under § 1983. Hudson v. McMillian, 503 U.S. 1, 9-10 (1992). The Eighth Amendment's prohibition against cruel and unusual punishment precludes the "unnecessary and wanton infliction of pain." Gregg v. Georgia, 428 U.S. 153, 173 (1976); Sims v. Artuz, 230 F.3d 14, 20 (2d Cir. 2000). To bring a claim of excessive

force under the Eighth Amendment, a plaintiff must establish both objective and subjective elements. Blyden v. Mancusi, 186 F.3d 252, 262 (2d Cir. 1999).

The objective element is "responsive to contemporary standards of decency" and requires a showing that "the injury actually inflicted is sufficiently serious to warrant Eighth Amendment protection." Hudson, 503 U.S. at 9 (internal citations omitted); Blyden, 186 F.3d at 262. However, "the malicious use of force to cause harm constitute[s] [an] Eighth Amendment violation per se" regardless of the seriousness of the injuries. Blyden, 186 F.3d at 263 (citing Hudson, 503 U.S. at 9). "The Eighth Amendment's prohibition of 'cruel and unusual' punishments necessarily excludes from constitutional recognition de minimis uses of physical force, provided that the use of force is not of a sort repugnant to the conscience of mankind." Hudson, 503 U.S. at 9-10 (citations omitted). "'Not every push or shove, even if it may later seem unnecessary in the peace of a judge's chambers, violates a prisoner's constitutional rights.'" Sims, 230 F.3d at 22 (citation omitted).

The subjective element requires a plaintiff to demonstrate the "necessary level of culpability, shown by actions characterized by wantonness." Sims, 230 at 21 (citation omitted). The wantonness inquiry "turns on 'whether force was applied in a good-faith effort to maintain or restore discipline, or maliciously and sadistically to cause harm.'" Id. (quoting Hudson, 503 U.S. at 7). In determining whether defendants acted in a malicious or wanton manner, the Second Circuit has identified five factors to consider: "the extent of the injury and the mental state of the defendant[;] . . . the need for the application of force; the correlation between that need and the amount of force used; the threat reasonably perceived by the defendants; and any efforts made by the defendants to temper the severity of a forceful response." Scott v. Coughlin, 344 F.3d 282, 291 (2d Cir. 2003)

10

(internal quotation marks and citations omitted).

Defendants contend that Swanton failed to allege a serious injury. However, medical records indicate that Swanton required medication, repeated interventions, and multiple courses of therapy throughout his incarceration. Moreover, Swanton's testimony indicates that he was in severe, albeit intermittent, pain for years. As such, construing the facts in the light most favorable to Swanton, he has alleged an injury worthy of Eighth Amendment protection. See Flemming v. City of New York, No. 03-CV-0662 (NGG)(lb), 2009 WL 3174060, at *3 (E.D.N.Y. Sept. 30, 2009) (noting that "...severe back and shoulder pain could amount to a serious injury under the Eighth Amendment.").

However, Swanton has failed to satisfy the subjective element of the test. Swanton has failed to raise a question of material fact as to Sczerba's culpability. It is undisputed that Sczerba was tasked with maintaining the safety and order of those individuals in the day room at CNYPC. Swanton suffered a psychotic episode where he became enraged and began destroying property in the room. Swanton's actions were erratic, aggressive, and unexpected. This presented a clear safety issue and Sczerba restrained Swanton using minimal force by wrapping his arms around him and quickly removing him to a separate, isolated area whereupon both Swanton and the other staff and residents would maintain their safety and the institution's order. On this record no reasonable finder of fact could but conclude that the force was applied in a good faith manner to maintain order and safety. Scott, 344 F.3d at 291. There are no allegations, nor would the record support any inferences that Sczerba knew Swanton or had any intention or motivation to hurt Swanton. While Sczerba's deposit of Swanton into the isolation room, and the plastic chair, may have been with unintended force, such actions illustrate the fact that "[n]ot every push or shove . . .

. violates a prisoner's constitutional rights." Sims, 230 F.3d at 22.

Accordingly, defendants' motion should be granted on this ground as to this claim.

## 2. Medical Care

"'Because society does not expect that prisoners will have unqualified access to healthcare,' a prisoner must first make [a] threshold showing of serious illness or injury" to state a cognizable claim. Smith v. Carpenter, 316 F.3d 178, 184 (2d Cir. 2003)(quoting Hudson, 503 U.S. at 9). Because there is no distinct litmus test, a serious medical condition is determined by factors such as "(1) whether a reasonable doctor or patient would perceive the medical need in question as 'important and worthy of comment or treatment,' (2) whether the medical condition significantly affects daily activities, and (3) the existence of chronic and substantial pain." Brock v. Wright, 315 F.3d 158, 162-63 (2d Cir. 2003)(citing Chance v. Armstrong, 143 F.3d 698, 702 (2d Cir. 1998)). The severity of the denial of care should also be judged within the context of the surrounding facts and circumstances of the case. Smith, 316 F.3d at 185.

Deliberate indifference requires the prisoner "to prove that the prison official knew of and disregarded the prisoner's serious medical needs." Chance v. Armstrong, 143 F.3d 698, 702 (2d Cir. 1998). Thus, prison officials must be "intentionally denying or delaying access to medical care or intentionally interfering with the treatment once prescribed." Estelle v. Gamble, 429 U.S. 97, 104 (1976). "Mere disagreement over proper treatment does not create a constitutional claim" as long as the treatment was adequate. Chance, 143 F.3d at 703. Thus, "disagreements over medications, diagnostic techniques (e.g., the need for X-rays), forms of treatment, or the need for specialists . . . are not adequate grounds for a

section 1983 claim." Sonds v. St. Barnabas Hosp. Corr. Health Servs., 151 F. Supp. 2d 303, 312 (S.D.N.Y. 2001).

As with Swanton's excessive force claim, defendants contend that Swanton has failed to allege or prove a serious medical condition. However, for the reasons stated above, viewing the facts in the light most favorable to Swanton he has alleged a serious medical condition. Swanton's shoulder condition required multiple appointments with various medical personnel and resulted in an x-ray, prescription pain medication, and months of physical therapy. Moreover, Swanton contends that his pain persists, as does his need for therapy. Accordingly, defendants' motion should be denied on this ground.

However, Swanton has failed to allege or prove that defendant Law was deliberately indifferent to his care. For the limited amount of intervention defendant Law provided, she gave Swanton an adequate discussion of his radiology reports as well as recommending physical therapy and continual pain medication. These actions militate against allegations of deliberate indifference. Swanton's primary complaint is that Law did not recommend or provide an MRI for his shoulder. Without determining whether this was even within Law's purview as a nurse practitioner, this argument represents nothing more than a disagreement over the diagnosis and treatment of Swanton's shoulder injury. Such complaints are insufficient to establish an Eighth Amendment violation. Sonds, 151 F. Supp. 2d at 312.

As Swanton was not entitled to dictate the type of care that he received, the only question is whether the care that Law provided was adequate. Chance, 143 F.3d at 703. Swanton attended multiple bi-weekly sessions of PT which, prior to his discharge from both PT and CNYPC had him subjectively expressing and objectively demonstrating pain relief,

13

increased strength, and improved range of motion. Accordingly, Swanton's health improved as a result of the interventions recommended by Law and subsequently provided by the medical staff. Accordingly, defendants' motion should be granted on this ground as to this claim.

### III. Conclusion

For the reasons stated above, it is hereby **RECOMMENDED** that defendants' motion for summary judgment (Dkt. No. 116) be **GRANTED** and that judgment be entered in favor of both defendants on both remaining claims.

Pursuant to 28 U.S.C. § 636(b)(1), the parties may lodge written objections to the foregoing report. Such objections shall be filed with the Clerk of the Court. **FAILURE TO OBJECT TO THIS REPORT WITHIN TEN DAYS WILL PRECLUDE APPELLATE REVIEW.** <u>Roldan v. Racette</u>, 984 F.2d 85, 89 (2d Cir. 1993); <u>Small v. Sec'y of HHS</u>, 892 F.2d 15 (2d Cir. 1989); 28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 72, 6(a), 6(e).

Dated: July 17, 2012
       Albany, New York

_David R. Homer_
United States Magistrate Judge